IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

_____

HIGH RIDGE HINKLE JOINT VENTURE
and GENE HINKLE,

     Plaintiffs,

     vs.                                  No. CIV 95-278 MV/LFG

THE CITY OF ALBUQUERQUE,

     Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment on Plaintiffs' Unconstitutional Municipal Policies and Customs Claims **[Doc. 91]**, Defendant's Motion for Summary Judgment on the Grounds of Mootness **[Doc. 93]**, Defendant's Motion for Summary Judgment on the Grounds of Plaintiffs' Lack of Property Interest **[Doc. 95]**, Defendant's Motion for Summary Judgment as to Claims for Due Process Violations **[Doc. 97]**, Defendant's Motion to Dismiss Claims for Punitive Damages and Damages Under the New Mexico Constitution **[Doc. 99]**, and Plaintiffs' Motion for Partial Summary Judgment **[Doc. 105]**, all filed November 30, 1998. In addition, the parties have submitted supplemental briefs at the request of the Court addressing the effect of the New Mexico Supreme Court decision in this case on the pending motions, filed July 22, 1999. The Court, having considered the moving papers, relevant law, and being otherwise fully informed, finds that Defendant's Motion to Dismiss Claims for Punitive Damages and Damages

Under the New Mexico Constitution is well taken and will be **GRANTED** and that the remaining motions are not well taken and will be **DENIED**.

## BACKGROUND

In this action pursuant to 42 U.S.C. § 1983, Plaintiffs High Ridge Hinkle Joint Venture ("High Ridge") and Gene Hinkle ("Hinkle") assert violations of their constitutional rights by Defendant the City of Albuquerque as a result of the City's failure to approve a development project. Specifically, Plaintiffs assert that the City violated their constitutional rights to substantive and procedural due process by refusing to allow Plaintiffs to construct a go-cart and a bumper boat ride at their amusement park.

For the purpose of resolving these motions, the Court finds that the following are the undisputed material facts[1]:

1.      In August of 1991, High Ridge began pursuing plans to develop an amusement park on 4.4 acres of undeveloped land which it owned in Albuquerque. At the time, the land was zoned C-2, "community commercial."

2.      The planned amusement park consisted of go-cart and bumper boat rides, in addition to a video game room, miniature golf course, baseball hitting range and basketball shooting area.

---

[1]The long and complicated history of this case is more fully laid out in two state court opinions, *High Ridge Hinkle Joint Venture v. Albuquerque*, 119 N.M. 29, 888 P.2d 475 (Ct. App. 1994), and *High Ridge Hinkle Joint Venture v. Albuquerque*, 126 N.M. 413, 970 P.2d 599 (1998).

3.      On August 23, 1991, Robert Romero, the Zoning Enforcement Officer for the City of Albuquerque, provided a letter to architect George Rainhart, agent for High Ridge, setting forth how Plaintiffs were to pursue approval of their development plans.

4.      Romero's letter stated that the video game room, miniature golf course, baseball hitting range and basketball shooting area were all permitted uses within the C-2 zone.

5.      Romero's letter further stated that the go-cart and bumper boat rides were "conditional uses" in the C-2 zone meaning that these uses required prior approval. The letter informed Plaintiffs that "[t]he next filing deadline for a conditional use request is September 3, 1991, for a September 25, 1991 hearing."

6.      According to the zoning ordinance, a conditional use application "shall be approved" if the applicant meets the requirements of the Conditional Use Criteria, demonstrating that the proposed use will not be injurious to adjacent property and that the use proposed will not be significantly damaged by surrounding structures or activities.

7.      The conditional use application process is a quasi-judicial proceeding where the applicant and any opposing party may present evidence and examine witnesses; testimony is taken under oath; a record of the hearing is made; and the decision may be appealed to the Zoning Board of Appeals, to the City Council and finally to the State District Court.

8.      The Zoning Hearing Examiner approved Plaintiffs' conditional use application subject to administrative review by the Board of Appeals and the City Council. The Embudo Canyon Neighborhood Association ("Neighborhood Association") appealed the decision and the Board of Appeals reversed, denying approval.

9.      Plaintiffs' appealed the denial of their conditional use application to the City Council, the final level of administrative appeal in the zoning process. The Neighborhood Association also appealed approval which had been given to Plaintiffs to develop the land. The City Council held hearings on a total of three appeals relating to Plaintiffs' development plans.

10.     The issue before the City Council, relevant to this case, was whether go-carts and bumper boats fell within the definition of conditional uses in the zoning statute or whether these were prohibited uses. The City Council's obligation in reviewing the appeal was thus solely to interpret the language of the zoning statute, not to consider the propriety of the project.

11.     City Councilor Deborah Lattimore had been president of the Embudo Canyon Neighborhood Association in 1989, was a member of the Neighborhood Association until September 1, 1991, and attended a Neighborhood Association meeting regarding Plaintiffs' project on September 17, 1991.

12.     Councilor Lattimore participated in decisions and votes regarding Plaintiffs' project as it proceeded through layers of administrative appeal. In many instances, decisions were taken against Plaintiffs interest by only one vote.

13.     Councilor Lattimore received letters of opposition which were not provided to Plaintiffs, and at least one of which the Neighborhood Association attempted to introduce as evidence at a Council hearing.

14.     The Neighborhood Association lobbied the City Council extensively in opposition to Plaintiffs' proposed go-carts and bumper boats.

15.     The City Council held by a unanimous vote that the go-cart and bumper boats rides were not permissible conditional uses in the C-2 Zone as defined by the zoning ordinance.

16.     The City Council further ruled that High Ridge had to submit a new site plan which accounted for the use to be made of the property in place of the rejected go-carts and bumper boats.

17.     On April 14, 1992, Plaintiffs filed an appeal of the City Council's decision in the State District Court.

18.     The State District Court entered summary judgment upholding the City Council's decision and Plaintiffs appealed.

19.     The New Mexico Court of Appeals reversed the District Court. *High Ridge Hinkle Joint Venture v. Albuquerque*, 119 N.M. 29, 888 P.2d 475 (Ct. App. 1994) (hereafter "*Hinkle I*"). The court found that the language of the zoning ordinance was ambiguous and that, in normal circumstances, the court would defer to the City Council's interpretation of the ordinance. However, the court concluded that procedural irregularities in the City Council hearings rendered the Council's decision suspect. Specifically, the Appeals Court noted that the Council appeared to be responding to public pressure rather than interpreting the zoning code and that one of the City Councilors reviewing the case was not impartial. The court remanded the case to the Council for further proceedings.

20.     The City Council again addressed the case on February 6, 1995. At that time, the Council reaffirmed their ruling that bumper boats and go-carts were not allowable uses in the C-2 zone. The Council reasoned that the zoning ordinance, which permitted conditional uses for "outside storage and activity," only permitted outside activity related to storage, not general "outside activity" of any kind.

21.     Although there was no previous City Council decision interpreting "outside storage and activity," a large variety of "outside activities," including go-carts, had been approved as conditional uses by the Zoning Hearing Officers in the past.

22.     On March 8, 1995, Plaintiffs appealed the City Council decision to State District Court for the second time.

23.     The State District Court and the New Mexico Court of Appeal affirmed the City Council decision but the New Mexico Supreme Court reversed. *High Ridge Hinkle Joint Venture v. Albuquerque*, 126 N.M. 413, 970 P.2d 599 (1998) (hereafter "*Hinkle II*"). The New Mexico Supreme Court held that the phrase "outside storage and activity" was not ambiguous and that the plain meaning of the phrase allowed for both "outside storage" and for "other outside activity." Accordingly, the Supreme Court held that the City Council's conclusion that the ordinance did not permit go-carts and bumper boats as conditional uses within the C-2 zone was erroneous.

24.     After remand following *Hinkle I* and prior to the appeal in *Hinkle II*, the City Council approved a revised site development plan for Plaintiffs' amusement park which proposed other uses in place of the go-carts and bumper boats.

25.     The Hinkle Family Fun Center opened on the site on April 1, 1994, operating an arcade and miniature golf course.

26.     On July 26, 1996, Plaintiffs applied to change the zoning of the site from C-2 to "SU-1 for C-2 uses and an amusement facility." The SU-1 zone may be designated to permit specific uses including an amusement park with all of the amenities Plaintiffs sought.

27.     The City Council approved the zone change on January 6, 1997. Following an appeal by the Embudo Canyon Neighborhood Association to state court, the New Mexico Court of Appeals

affirmed the zone change. *Embudo Canyon Neighborhood Association v. City of Albuquerque*, 126 N.M. 327, 968 P.2d 1190 (Ct. App. 1998).

28.     Plaintiffs subsequently applied for and received a permit to build the bumper boat and go-cart attractions.

29.     Plaintiffs opened the bumper boat and go-cart rides on May 23, 1997.

## STANDARD OF REVIEW

### 1.     Motions for Summary Judgement

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1). Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B&B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case."*Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United States*, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322.

2.      **Motion to Dismiss**

A court may not dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts supporting his or her claim that would entitle him or her to relief. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989). In considering a Rule 12(b)(6) motion, the court must assume as true all well-pleaded facts, and must draw all reasonable inferences in favor of the plaintiff. *Housing Auth. of the Kaw Tribe v. City of Ponca City*, 952 F.2d 1183, 1187 (10th Cir. 1991). The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his or her claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). These deferential rules, however, do not allow the court to assume that a plaintiff "can prove facts that [he or she] has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). "[G]ranting a motion to dismiss is 'a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'" *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873

F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)).

## ANALYSIS

Currently before the Court are six motions of the parties addressing various aspects of Plaintiffs' claims. The Court will address these motions according to the dispositive nature of the issues raised. The Court first finds that Plaintiffs have a sufficient property interest to pursue their constitutional challenges to Defendant's actions and that the claims are not moot. The Court then addresses the substance of Plaintiffs' procedural and substantive due process claims, finding that summary judgment in favor of either party is not appropriate. Finally, the Court finds that Plaintiffs have sufficiently established the basis for municipal liability, assuming a constitutional violation is proven at trial, but that Plaintiffs' claims for punitive damages and for damages pursuant to the New Mexico Constitution should be dismissed.

### 1.      Plaintiffs' Property Interest

In a previous Memorandum Opinion and Order [**Doc. 64**], the Court ruled that Plaintiffs do have a property interest which provides them standing to pursue the constitutional violations complained of here. Defendant now seeks reconsideration of that ruling.

The Due Process Clause of the Fourteenth Amendment provides that no State shall " deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. As a prerequisite to a due process claim, the plaintiff must establish a recognized "property interest" which the state has allegedly infringed. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Lehman v. City of Louisville*, 967 F.2d 1474, 1476 (10th

Cir. 1992); *Jacobs, Visconti & Jacobs v. City of Lawrence*, 927 F.2d 1111, 1116 (10th Cir.1991).

"A property interest protected by the due process clause results from a legitimate claim of entitlement created and defined 'by existing rules or understandings that stem from an independent source such as state law.'" *Jacobs, Visconti & Jacobs, Co.*, 927 F.2d at 116 (quoting *Roth*, 408 U.S. at 577); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); *Lehman*, 967 F.2d at 1476-77. "The hallmark of property, . . . , is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982)). Plaintiffs "must therefore demonstrate that there is a set of conditions the fulfillment of which would give rise to a legitimate expectation to the [approval] of their [requested] property [use]. Otherwise, the city's decision making lacks sufficient substantive limitations to invoke due process guarantees." *Jacobs, Visconti & Jacobs, Co.*, 927 F.2d at 116.

In the recent case of *Norton v. Village of Corrales*, 103 F.3d 928 (10th Cir. 1996), the Tenth Circuit explained,

> [i]n the entitlement analysis nearly all courts focus on whether there is discretion in the defendants to deny a zoning or other application filed by the plaintiffs. . . . "the entitlement analysis focuses on the degree of official discretion and not on the probability of its favorable exercise . . . ."

At 931-32 (quoting *RRI Realty Corp. v. Incorporated Village of Southampton*, 870 F.2d 911, 918 (2d Cir.), cert. denied, 493 U.S. 893, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989)). The question, thus, in a zoning case is whether "the zoning authority had discretion to deny" the requested use or permit or whether the application must be approved upon the satisfaction of certain pre-conditions. *Id.* at 932; *see also Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1999) (in employment

context, analysis as to whether public employee had a protected property interest in his or her position focuses on whether the government actor's discretion in hiring was limited by statute or contract); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (financial aid recipients had property interests in aid where concrete rules established eligibility, limiting discretion of decision makers). In the case before it, the Tenth Circuit concluded that because the zoning authority had discretion to deny the permit application in the first thirty days, the plaintiff could not establish an entitlement to the permit. *Norton*, 103 F.3d at 932. The court reached this conclusion despite the fact that the zoning authority had not in fact denied the application within the first thirty days, with the result that, under state law, the plaintiff was entitled to the permit as a matter of right. *Id*.

In the present case, Defendant asserts that Plaintiffs have similarly failed to establish an entitlement to the property use at issue. Relying on *Norton*, Defendant notes that the go-carts and bumper boats were conditional uses within the C-2 zone. Conditional uses are only permitted upon a showing that the use will not harm the surrounding buildings and community. Because Defendant could have refused to permit the go-carts and bumper boats on these grounds, Defendant asserts that Plaintiffs cannot establish an entitlement to these uses, even accepting that the grounds Defendant did use to deny the permits were invalid and without legal support.

Defendant is here attempting to convert a non-discretionary decision into a discretionary one. It is true that to be entitled to use the land for go-cart and bumper boat rides, Plaintiffs had to establish that these uses would not harm the surrounding community. But, once Plaintiffs had made this showing, the zoning ordinance provides that the use "shall be permitted." Zoning Code § 42.C.1.a.; *State ex rel. Battershell v. Albuquerque*, 108 N.M. 658, 661, 777 P.2d 386, 389

(Ct.App.1989) ("The ordinance provides that a conditional use permit *shall be permitted* if the City determines that the use will 'not be injurious to adjacent property, the neighborhood, or the community.'"(emphasis added)). Defendant in fact had no discretion to deny the permits at all. Rather, Defendant could only deny the permits if Plaintiff failed to establish the lack of harmful impact. But, once Plaintiffs successfully completed all of the evidentiary and administrative requirements of the application process, they were then entitled to the permits as a matter of right. Thus, Plaintiffs have established an entitlement to the property interest infringed by Defendant, allowing them to pursue their constitutional challenges to Defendant's actions. *Norton*, 103 F.3d at 932.

### 2.    Mootness of Claims

Next, Defendant argues that Plaintiffs' claims are moot because Plaintiffs were eventually permitted to build the requested go-cart and bumper boat rides. Plaintiffs, however, still seek monetary damages for the delay which Defendant caused in the construction of these facilities. *See Zaintz v. City of Albuquerque*, 739 F.Supp. 1462, 1469 (D.N.M. 1990) (finding City may be liable for due process violation even though zoning permit was ultimately granted). A claim for damages pursuant to 42 U.S.C. § 1983 may be pursued even if the constitutional violation is not on-going. *City of Richmond v. Croson*, 488 U.S. 469, 478, 109 S.Ct. 706, 713, 102 L.Ed.2d 854 (1989). To the extent that Defendant complains that Plaintiffs could have sought a zone change earlier then they did, this argument merely goes to the extent of Plaintiffs' damages, not the continuing viability of their damage claims. Plaintiffs' claims therefore are not moot.

### 3.    Procedural Due Process Claim

Both Plaintiffs and Defendant seek summary judgment in their favor on Plaintiffs' claim that Defendant violated their rights to procedural due process. Defendant asserts that Plaintiffs' claim amounts to nothing more than assertion that the City Council failed to abide by state or local rules and that any failing by the Council was cured by the subsequent judicial review in Plaintiffs' favor. Plaintiffs respond that the essence of their claim is that they were denied an impartial tribunal before the City Council. Plaintiffs continue to argue that the lack of impartiality was so pronounced that they are entitled to judgement in their favor as a matter of law.

"The Due Process Clause . . . encompasses . . . a guarantee of fair procedure. A § 1983 action may be brought for a violation of procedural due process . . . ." *Zinermon v. Burch*, 494 U.S. 113, 125. "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Id.*

As the Supreme Court has observed, "a fair trial in a fair tribunal is a basic requirement of due process. This applies to administrative agencies which adjudicate as well as to courts. Not only is a biased decisionmaker constitutionally unacceptable but our system of law has always endeavored to prevent even the probability of unfairness." *Winthrop v. Larkin*, 421 U.S. 35, 46-47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) (citations and quotation marks omitted). Similarly, as Judge Parker of this Court observed in a zoning case, "[t]he regular and impartial administration of public rules . . . prohibits the subtle distortions of prejudice and bias as well as gross governmental violations exemplified by bribery and corruption and the punishment of political and economic enemies through the administrative process." *Zaintz v. City of Albuquerque*, 739 F.Supp. 1462, 1470 (D.N.M. 1990) (quoting *Wilkerson v. Johnson*, 699 F.2d 325, 328 (6th Cir.1983) and citing *Gibson v. Berryhill*, 411

U.S. 564, 578-79, 93 S.Ct. 1689, 1697-98, 36 L.Ed.2d 488 (1973)). The Supreme Court of New Mexico has also specifically recognized a violation of due process in the context of zoning decisions when the involvement of a biased hearing officer "deprived petitioner of his right to a meaningful and impartial decision-maker." *Miller v. City of Albuquerque*, 89 N.M. 503, 507, 554 P.2d 665, 667 (1976).

In the present case, Plaintiff has produced evidence supporting the inference that one of the Council members was biased. Specifically, Council member Lattimore had previously served as president of the very Neighborhood Association which actively opposed Plaintiffs' project. Further Councilor Lattimore attended at least one Association meeting regarding the project and maintained contact with members of the Association who opposed the project. Council Lattimore not only took part in all of the discussions, deliberations and votes on Plaintiffs' project, Council Lattimore also actively lobbied against the project. This is more than sufficient evidence to call into question whether Plaintiffs were denied an impartial tribunal, in violation of due process guarantees.

Defendant argues that even if Plaintiffs were denied a fair tribunal initially, this defect has been "cured" by judicial review by the New Mexico State Courts. Defendant is correct that when presented with a procedural due process challenge, "it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." *Zinermon*, 494 U.S. at 126. Relying on two Supreme Court cases which found that post-deprivation state tort remedies were sufficient due process, Defendant argues that the availability of judicial review in the current case was sufficient due process to "cure" or "remedy" the taint of the initial decision making process. *See Parratt v. Taylor*,

451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (overruled in part not relevant here, by *Daniels v. Williams*, 474 U.S. 327, 330-331, 106 S.Ct. 662, 88 L.Ed.2d 662, (1986)); *Hudson v. Palmer*, 468 U.S. 517 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

However, as the Supreme Court explained in *Zinermon, supra*, 494 U.S. 113, the cases relied on by Defendant, *Parratt* and *Hudson*, "represent a special case of the general [due process] analysis, in which postdeprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide." At 132. *Parratt* involved a due process claim arising from prison guards who inadvertently failed to deliver the plaintiff's mail and *Hudson* involved a claim arising from a prison guard's intentional destruction of the plaintiff's property. *Id*. As the Supreme Court explained in *Zinermon*, key to the court's conclusion that post-deprivation state tort remedies were sufficient due process in both cases was the "random and unpredictable nature of the deprivation." *Id*. at 132. In contrast, the court in *Zinermon* concluded that the state had to provide pre-deprivation due process guarantees to a mentally ill plaintiff, insuring that he was competent to have himself voluntarily committed prior to placing him in a state mental hospital, in part because it was within the state's power to provide such process. *Id*.

Likewise, the present case does not present a situation in which it would not be possible for the City of Albuquerque to provide a fair and impartial tribunal prior to depriving Plaintiffs of their legitimate property interests. Rather, Defendant, having actually provided a tribunal, must provide one that accords with the basic elements of due process. *See Zaintz*, 739 F.Supp. at 1470; *Miller*, 89 N.M. a 507. Just as Defendant could not convict an individual in a kangaroo court and then assert that the availability of habeas review in the federal courts "cured" the defect, Defendant cannot simply disregard the basic elements of fairness in a zoning appeal, as required by due process, and leave it

to the courts of the state of New Mexico to undue the damage. More precisely, if Defendant chooses to take this course, then it is rightly subject to liability under § 1983.

On the other hand, the record before the Court does not support Plaintiffs' contention that they are entitled to judgement in their favor as a matter of law. Even accepting the evidence of bias and impartiality in the record, the Court is not convinced that the bias demonstrated here is sufficient to rise to the level of a due process violation. Indeed, in a case relied on by Plaintiffs, the Supreme Court concluded that absent a direct stake in the outcome of the case, personal dislike for the parties was insufficient to establish bias to such a degree that the parties had been denied due process. *Aetna Life Insurance Co. v. Lavoie*, 475 U.S. 813, 820-22, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986). Similarly, the Supreme Court explained in another case cited by Plaintiffs, "various situations have been identified in which experience teaches that the probability of actual bias on the part of the judge or decision maker is too high to be constitutionally tolerable. Among these cases are those in which the adjudicator has a pecuniary interest in the outcome and in which he has been the target of personal abuse or criticism from the party before him." *Winthrop*, 421 U.S. at 46-47.

In contrast, in the present case, although it is clear that Council Lattimore was opposed to Plaintiffs' project, it is not clear on the record before the Court that her opposition rose to such a level that she was incapable of acting as a fair adjudicator in this matter. Further, although there is evidence that Council Lattimore's opposition and that of the Neighborhood Association influenced the decision of the other council members, the Court cannot say based on the current record that this influence rose to the level of a due process violation as a matter of law. Specifically, the Court does not have before it sufficient information to determine the degree to which Councilor Lattimore's bias and the activities of the Neighborhood Association tainted the decisions of the other council

members, all of whom ultimately joined in the decision to deny Plaintiffs' permit application. The Court is mindful that "[f]ederal courts should be reluctant to interfere in zoning disputes which are local concerns." *Norton*, 103 F.3d at 933 (citing *Gunkel v. City of Emporia*, 835 F.2d 1302, 1304 (10th Cir.1987)). The Court finds it imprudent to conclude that the City Council's conduct in this case rose to the level of a due process violation based solely on the paper record currently before it. Accordingly, the Court finds that summary judgment on Plaintiffs' due process claims in favor of either party is not warranted.

### 4.      Substantive Due Process Claim

Both parties also seek summary judgment in their favor on Plaintiffs' substantive due process claims. Defendant asserts that Plaintiffs cannot produce sufficient evidence to establish a violation of their substantive due process rights while Plaintiffs assert that the undisputed facts demonstrate a violation as a matter of law.

"[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). However, "[a]bsent invidious discrimination, the presence of a suspect class, or infringement of a fundamental interest, courts have limited their review of quasi-legislative or quasi-judicial zoning decisions in the face of a substantive due process challenge to determining whether the decision was arbitrary and capricious." *Jacobs, Visconsi & Jacobs, Co.*, 927 F.2d at 1119; *Norton*, 103 F.3d at 932.

As the Tenth Circuit stated in *Norton*, "'arbitrary and capricious' in this context does not mean simply erroneous." *Norton*, 103 F.3d at 932. "'Actions that violate state law are properly challenged in state courts .... [t]he legality of a zoning decision under applicable state law is not

determinative of whether the decision violated federal substantive law.'" *Id.* (quoting *Sylvia Development Corp. v. Calvert County*, 48 F.3d 810, 829 (4th Cir.1995). Quoting further from the Fourth Circuit opinion in *Sylvia Development*, the Tenth Circuit continued to observe,

> "[i]n more recent decisions, the Supreme Court has narrowed the scope of substantive due process protection in the zoning context so that such a claim can survive only if the alleged purpose behind the state action has no conceivable rational relationship to the exercise of the state's traditional police power through zoning. In short, the doctrine of substantive due process is a constitutionally imposed limitation, which is intended only to prevent government "from abusing [its] power, or employing it as an instrument of oppression."

*Id.* (quoting *Sylvia Development*, 48 F.3d at 827) (internal quotations and citations omitted). "The protection of substantive due process is indeed narrow and covers only state action which is 'so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies.'" *Sylvia Development*, 48 F.3d at 827 (quoting *Rucker v. Harford County*, 946 F.2d 278, 281 (4th Cir.1991), cert. denied, 502 U.S. 1097, 112 S.Ct. 1175, 117 L.Ed.2d 420 (1992)).

Pursuant to the principles articulated above, courts will conclude that a zoning decision is arbitrary and capricious and therefore in violation of substantive due process only where the defendant has failed to articulate "a rational reason for their decision which is related to a legitimate government interest." *Norton*, 103 F.3d at 933. Further, if the defendant proffers such a reason, courts "will not look beyond it for evidence that the reason was a pretext." *Id.*

In the present case, Defendant asserts that, while it may have made an error in interpreting the zoning ordinance, it did not act in an arbitrary and capricious manner. Rather, Defendant argues, the City Council's interpretation of the term "outside storage and activity" as excluding Plaintiffs'

proposed uses was on its face reasonable and not arbitrary and capricious nor an abuse of power. Plaintiffs respond that the New Mexico Supreme Court found the City Council's interpretation unreasonable in light of both the plain meaning of the words and the past practice of the City which was to approve a wide range of outside activities as conditional uses. Plaintiffs further argue that the New Mexico Court of Appeals, in *Hinkle I*, remanded the first denial back to the City Council for reconsideration specifically because it found that the record before it called into question the legitimacy of the Council's decision making process. Thus, Plaintiffs assert, the undisputed facts establish that Defendant acted in an arbitrary and capricious manner by disregarding long-standing practice and basing its decision on the popular will.

No doubt, the record before the Court establishes that the actions of the City Council were both clearly erroneous and seriously suspect in their motivations. The Court thus finds that Defendant has failed to establish that the City Council acted in a rational manner in the pursuit of a legitimate government interest. However, arbitrary and capricious is a high standard to meet, particularly in light of the fact that the Plaintiffs' interests were ultimately vindicated in state court. *See Sylvia Development*, 48 F.3d at 827. The Court thus finds that the record before it is insufficient to establish that the Council's conduct strayed so far from the realm of that expected of a governmental body that Plaintiffs' constitutional rights were violated as a matter of law. Accordingly, the Court finds that summary judgment in favor of either party is not appropriate at this time.

### 5.    Municipal Liability Claims

Defendant next argues that even if Plaintiffs have established due process violations by the individual City Councilors, Plaintiffs cannot establish municipal liability in that Plaintiffs have failed to produce any evidence of a municipal policy or custom which resulted in the constitutional violation alleged. Plaintiffs respond that municipal liability stems from the fact that the City Council itself made the decision which resulted in the alleged constitutional violation.

The now well settled standard for municipal liability in the context of section 1983 claims was explained by the Tenth Circuit in *Weimer v. Schraeder*, 952 F.2d 336(10th Cir. 1991), as follows:

> [t]he Supreme Court, in *Monell v. Department of Social Services*, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611 (1978), held that municipalities could be held liable under § 1983 if the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decision making channels.

At 341. The Tenth Circuit continued to explain,

> [t]he Supreme Court further refined its *Monell* decision in *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986), by holding that in order to affix liability to a municipality under § 1983, the alleged unconstitutional acts must be committed by an official possessing final policymaking authority with respect to the alleged acts. The offensive policy must emanate from an officially promulgated decision or from a practice which is well-settled and permanent. *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036. In addition, there must be a showing that the policies of the municipality were directly connected to the constitutional deprivation.

*Id*.

As *Weimer* makes clear, municipal liability may be premised not only on the existence of an official policy or custom but also on a "decision officially adopted and promulgated" by "an official

possessing final policymaking authority with respect to the alleged acts." *Id*. In the present case, the decision of which Plaintiffs complain was made by the City Council, the body within the municipal administration with the ultimate authority to review Plaintiffs' permit application. The decision thus appears to fall squarely within the scope of municipal liability as defined in *Monell* and *Weimer*. *Id*.

Defendant attempts to escape this rather obvious conclusion by asserting that the City Council was acting in a "quasi-judicial" capacity, rather than a "policy-making" or "legislative" capacity when it acted, making it not the "final policymaking authority with respect to the alleged acts." Defendant is correct that review of zoning proceedings by the City Council is quasi-judicial in nature. *See Dugger v. City of Santa Fe*, 114 N.M. 47, 51, 834 P.2d 424, 428 (Ct. App. 1992); *State ex rel. Battershell v. Albuquerque*, 108 N.M. 658, 662, 777 P.2d 386, 390 (Ct.App.1989). Defendant is also correct that a judicial officer, acting within his judicial role, is not a "municipal policy maker" within the meaning of *Monell*. *See Eggar v. Livingston*, 40 F.3d 312, 315 (9th Cir. 1994). However, Defendant has presented no authority for the proposition that a city is not liable for unconstitutional decisions made by its city council in a quasi-judicial capacity. It is in this circumstance that the meaning of the term "quasi-judicial" takes a significant departure from the meaning of "judicial." Indeed, in this case, the essence of Plaintiffs' complaint is that the City Council failed to adhere to its quasi-judicial role but instead acted merely out of a desire to make new policy and cater to political will. If Plaintiffs' claims are proven at trial, then Plaintiffs will have established that the City Council abandoned its quasi-judicial role in the interest of making official policy, thereby rightfully subjecting the City of Albuquerque to municipal liability for their actions.

6.      **Punitive Damages and Damages Under the New Mexico Constitution**

Finally, Defendant seeks dismissal of Plaintiffs' claims for punitive damages on the grounds that punitive damages are not available for a 42 U.S.C. § 1983 action against a public entity. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Defendant also seeks dismissal of Plaintiffs' claims for damages under the New Mexico Constitution on the grounds that such damages are not available. *Ford v. New Mexico Dept. of Public Safety*, 119 N.M. 405, 412, 891 P.2d 546, 553 (Ct. App. 1994); *Begay v. State of New Mexico*, 104 N.M. 483, 488, 723 P.2d 252, 257 (Ct. App. 1985). Plaintiffs acknowledge that Defendants are correct and do not contest the dismissal of these claims. Accordingly, Plaintiffs' claims for punitive damages will be dismissed as will Plaintiffs' claims for damages under the New Mexico Constitution.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Partial Summary Judgment **[Doc. 105],** Defendant's Motion for Summary Judgment on Plaintiffs' Unconstitutional Municipal Policies and Customs Claims **[Doc. 91]**, Defendant's Motion for Summary Judgment on the Grounds of Mootness **[Doc. 93]**, Defendant's Motion for Summary Judgment on the Grounds of Plaintiffs' Lack of Property Interest **[Doc. 95]**, and Defendant's Motion for Summary Judgment as to Claims for Due Process Violations **[Doc. 97]** are all hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Claims for Punitive Damages and Damages Under the New Mexico Constitution **[Doc. 99]** is hereby **GRANTED**.

Plaintiffs' claims for punitive damages and for damages under the New Mexico Constitution are hereby **DISMISSED WITH PREJUDICE**.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT COURT JUDGE

<u>Attorneys for Plaintiff:</u>
    Elizabeth Simpson
    Stephen LeCuyer

<u>Attorney for Defendants:</u>
    Randy Autio